Assumpsit brought against the defendant as indorser of a bill of exchange, as follows:
$5,000. FAYETTEVILLE, 7 December, 1818.
Ninety days after sight of this, my first of exchange, second of same tenor and date unpaid, pay to the order of James Seawell five thousand dollars, value received, and place the same to account of
Your very humble servant,
D. OCHILTREE.
To Samuel Murley, Esq., Charleston, S.C.
The bill was indorsed by the defendant to J. R. Adam, and by him indorsed to the Bank of Cape Fear, and by that bank to the Planters Mechanics Bank of South Carolina. On 12 December, 1818, the bill was accepted by the drawee, and on 15 March, 1819, was protested for nonpayment. On 19 March, 1819, the plaintiffs received a letter *Page 314 
inclosing the bill of exchange, the protest of the notary, and a notice addressed to "J. Seawell, Esq.," in the following words, viz.:
You will please to take notice, D. Ochiltree's draft on S. Murley, accepted by him for 5,000 dollars 00 cents, on which note you are indorser, is placed in my hands from the Planters and Mechanics Bank for protest. It not being settled by the drawer, payment is expected from you immediately. JOHN HINCKLEY MITCHELL. (561) CHARLESTON, 15 March, 1819. Notary Public.
The runner of the Bank of Cape Fear proved that on the same day on which the foregoing notice reached Fayetteville he, by direction of the officers of the bank, handed it to the defendant; that he never gave him any other notice, and that the name John Hinckley Mitchell was printed, and there was no notarial seal affixed to it. It was further proved that the defendant a few days after made application to the bank of Cape Fear to bring suit against the acceptor, to which they replied that he was liable and more convenient to them; if he wished the acceptor sued he might take up the bill and bring suit himself.
The protest which made part of the case purported to have been made on 15 March, 1819, at the request of the Planters and Mechanics Bank of South Carolina; that to the demand of payment made on the acceptor, the reply was, "I cannot pay the bill, not having funds of the drawer"; and that written notices had been sent by mail to the drawer and the indorsers.
The defendant pleaded the general issue, and on the trial below, beforeDaniel, J., the question was principally whether the defendant had received legal notice of the nonpayment of the bill.
The court in its charge told the jury that the plaintiffs were bound to make it appear in evidence that a demand had been made on the acceptor when the bill was payable, and on refusal of payment the defendant should have had notice in a reasonable time of that fact. That the act of Assembly of 1819 made the protest of the notary public prima facie
evidence of the demand, and also prima facie evidence of notice; the manner in which he had done the same was set forth so that the (562) court and jury could see that it was legally done, and done in a reasonable time.
The court left it to the jury to say whether they could collect from the manner of the notary's protest that Seawell had notice of a demand upon theacceptor and refusal of payment in a reasonable time; and if the protest,in manner and form as it now stood, raised a presumption in their minds that the defendant had been regularly notified; whether *Page 315 
the evidence of the runner of the bank did not rebut the inference that any other notice had ever been given to the defendant, except that stated in the printed letter purporting to be from John H. Mitchell to James Seawell, and thereby rebut and overrule any presumption that might arise from the protest that a demand had been made, and reasonable notice given the defendant of such demand and refusal to pay by the acceptor. If it did they would find for the defendant.
The court further informed the jury that if they should be of opinion that Seawell had not such reasonable notice as the law required, he would be still liable to pay the bill if he promised to pay the same, having a clear knowledge of all the facts which would have exonerated him from such liability; but if he made any promise to pay, after he might have been exonerated from the want of notice, if he was ignorant of such acts, he would not be legally liable on such promise. Was any promise made? was the first question.
The jury returned a verdict for the defendant; a new trial was moved for on the ground of misdirection by the court as to the law of notice. New trial refused, judgment and appeal.
It seems to be agreed that there is no prescribed form of (565) notice, but that, as the only reason for requiring it is to give the indorser the earliest opportunity of resorting to the party liable to him, any notice from which he can reasonably collect the bill has been presented and not paid is sufficient. That the notice in this case was calculated to apprise the defendant of the presentment and nonpayment of the draft, and that he could not possibly be misled by it seems to me apparent from the circumstances of the case. The bill is dated 7 December, 1818, and is accepted in Charleston the 12th of the same month, payable ninety days after sight, consequently it was due, allowing for the three days of grace, 15 March. Now the notice is dated the 15th, and coming from and signed by a notary public, who tells the defendant that payment is expected from him immediately, must have forcibly convinced him that a demand of payment had been made on the acceptor. Every merchant would anxiously watch the progress of a transaction to so large amount, and would know that he could not be looked to for payment, unless a demand had been made on the acceptor. That, in point of fact, the notice did answer the purpose for which it was intended is further apparent from the defendant's application to the bank; for how could they (566) sue the acceptor unless he had refused to pay the money when due? *Page 316 
The authorities generally tend to establish the position that the notice is sufficient if under all circumstances it is sufficient to put the indorser on inquiry; and that is properly a question of fact for the jury to decide.Prudy v. Seixas; 2 Johns Cases, 337. I am therefore of opinion that a new trial be granted.